**George W. HILLHOUSE, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 80–5018.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Aug. 30, 1982.

---

Bobby L. Odom, Fayetteville, Ark., for plaintiff.

U. S. Atty. W. Asa Hutchinson, Fort Smith, Ark., for defendant.

OPINION

ARNOLD, Circuit Judge.

Cross-motions for summary judgment are now before the Court in this social security disability case. On January 22, 1981, this Court remanded the case so that the Secretary could consider plaintiff's allegations of disabling back pain and make credibility findings. On remand plaintiff testified before a second administrative law judge (ALJ) and reiterated his complaints of pain. The ALJ found the testimony credible and awarded disability benefits. The Appeals Council reversed, finding plaintiff's testimony was not credible.

The relevant facts are as follows:

The plaintiff, thirty-seven years old with an eleventh grade education, has worked as a gas station attendant, inspector in a hosiery factory, and machinery assembler and repairman (Tr. 17). Plaintiff last worked for Citation Manufacturing Company, where he injured his back in January of 1978. When plaintiff returned to work he was given a job as a supervisor, a position he held until the company went bankrupt in March, 1979 (Tr. 18–19). The plaintiff claims that he still has trouble with his back and has not been able to find a job since his layoff in March of 1979 (Tr. 19). The plaintiff claims that his back trouble consists of severe back pain running down through the left leg (Tr. 8, 69, 71, 78). The plaintiff said that due to this almost constant pain he is unable to stoop, bend, or lift much (Tr. 57). Further, if he sits or stands in one spot too long, his back bothers him (Tr. 19). He therefore spends a lot of his time lying down with the heating pad on. The plaintiff also complains of hemorrhoids and an ulcer. Because of these impairments the plaintiff is said to be unable to engage in any substantial, gainful activity.

*Hillhouse v. Harris,* No. 80–5018 (W.D.Ark., January 22, 1981), slip op. at 2.

The medical evidence, *see id.* at 2–3, revealed that plaintiff was hospitalized in January 1978 with acute low back syndrome (Tr. 56–62). In February 1978 Dr. Jorge Johnson, a neurologist, evaluated plaintiff. Dr. Johnson believed plaintiff had "just a low back strain," and that physical therapy and simple, non-narcotic medications would improve plaintiff's condition (Tr. 69–70). In March 1979 Dr. Johnson again saw plaintiff for complaints of low back pain and reported, "I do not think he has any focal neurologic problem at the present time. I think his pain is musculoskeletal. I would suggest that he limit his lifting to no more than 25 to 30 pounds" (Tr. 72).

Plaintiff also saw Dr. William Webb three times in 1979 for complaints of low back pain. Dr. Webb reported, however, that plaintiff had no loss of motion and ambulated, flexed, and bended well (Tr. 73).

Dr. Webb referred plaintiff to Dr. Vincent Runnels, a neurologist, for evaluation. Dr. Runnels examined plaintiff on September 21, 1979, and reported that plaintiff had improved but that he had occasional sharp pain in the lower back and pain in his left leg and shoulder. Dr. Runnels noted plaintiff had returned to work "at light duty and in a supervisory capacity and was doing reasonably well when the company went under" (Tr. 78). After physical and x-ray examination, Dr. Runnels concluded that plaintiff would have difficulty with heavy lifting or prolonged standing (Tr. 79).

At the supplemental hearing, plaintiff reiterated his complaints of back pain. He stated his ulcer no longer bothered him but he still had a hemorrhoid problem (Tr. 102). Plaintiff's wife corroborated his testimony (Tr. 108–09). In addition, his pastor testified that plaintiff was a "truth telling man" (Tr. 110). He testified that in 1980 he went to the Arkansas Rehabilitation Center and in January 1981 began a period of trial work at a printing shop (Tr. 105). He stated he first "shuffled papers" but was unable to perform the work because of tendonitis of the left arm (Tr. 106); he then unsuccessfully attempted janitorial duties (Tr. 106). Plaintiff, however, testified that he was returning to vocational rehabilitation to learn off-set printing. Plaintiff believed he could do the work because it did not involve heavy lifting and he could alternate sitting and standing (Tr. 107).

To supplement the medical evidence, plaintiff submitted two two-line letters from a Dr. David Dean who saw him in 1981 on February 11 and 16. The February 16, 1981, letter states, "George Hillhouse is under my care and was seen in my office today. He is to return to see me Friday. He will not be able to return to work until after I have seen him on Friday" (Tr. 112).

The ALJ found plaintiff's complaints credible. In evaluating plaintiff's allegation of pain, the ALJ looked to *Brand v. Sec. of HEW,* 623 F.2d 523 (8th Cir. 1980), for guidance. In *Brand,* the Court of Appeals made clear that the "Secretary must

give some consideration to subjective complaints even though they are not necessarily corroborated by objective findings." *Id.* at 526. In analyzing the *Brand* opinion, the ALJ correctly stated that "the court is pointing out the significance of a claimant appearing in person and being placed under oath and rendering testimony" (Tr. 91). The ALJ then concluded, "If a claimant testified that he experiences severe pain, . . . and in observing his demeanor while testifying, an Administrative Law Judge concludes that the testimony is credible, . . . this necessitates a finding of disability, particularly when the record contains medical opinions that the claimant's allegation of pain is genuine" (Tr. 91). Concerning plaintiff's allegations, the ALJ stated that "[i]n observing the claimant at the hearing, including his demeanor, . . . claimant's credibility could not be questioned" (Tr. 92). The ALJ also noted that claimant had seen a doctor twice in February of 1978.

The Appeals Council, on "own motion review," 20 C.F.R. § 404.969 (1981), overturned the ALJ's recommended findings and decision (Tr. 82–85). In so doing, the Appeals Council made an "independent study of the entire record including the testimony at the hearing" (Tr. 83). The Appeals Council reviewed the medical evidence and noted "two neurosurgeons treating the claimant have reported that he is restricted only from the performance of heavy work" (Tr. 84). In assessing plaintiff's credibility, the Council noted that in his disability application, plaintiff stated he was drawing unemployment benefits (Tr. 29, 84). The Council apparently took administrative notice that "in order to draw [unemployment benefits] he had to certify that he was able and willing to return to any available work within his vocational competence" (Tr. 84). The Council also noted that plaintiff sought vocational rehabilitation training because he "had no good luck as far as finding a job, so I knew I had to do something on account of my responsibility to my family" (Tr. 21, 84), and that plaintiff's "last work activity as a supervisor for the Citation Company ceased due to non-medical reasons, the company closed" (Tr. 18–19, 84). Furthermore, the Council

took into account the February 1981 statements by Dr. Dean that plaintiff was unable to return to work, but discounted them because they were unsupported by medical findings and conflicted with the reports of the treating neurosurgeons (Tr. 84). For all of these reasons, the Council concluded plaintiff's allegations of disabling pain were not credible and that he could return to work as a supervisor and thus denied benefits (Tr. 85).

The sole question before this Court is whether the Appeals Council's decision is supported by substantial evidence. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). In *Universal Camera* the Supreme Court set forth the standard of review when an agency overturns an administrative law judge's (formerly known as a hearing examiner) findings, including credibility findings:

> The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is "substantial."

340 U.S. at 496–97, 71 S.Ct. at 468–469.

The Court is aware that the ALJ had the opportunity to observe plaintiff's

appearance and demeanor at the fifteen-minute hearing on remand and that the credibility of plaintiff's testimony is the determinative issue in the case. The key point, however, is that the Court is reviewing the Secretary's decision, not the ALJ's. Usually they are the same, because the Appeals Council usually agrees with ALJs. But the question is always whether there is substantial evidence to support the Secretary's decision. Certainly the evidence supporting the ALJ's decision is substantial. If this Court had been the trier of fact, it might well have reached the same conclusion. But the issue raised by this review proceeding is different: it is simply whether there is enough relevant evidence in the record to persuade a reasonable mind to reject the claimant's subjective testimony. Demeanor is important; it may be dispositive; and usually credibility findings based on demeanor are upheld. That result, however, is not automatic. The reviewing authority—here, the Appeals Council—still has a duty to weigh the entire record. It has done so, and this Court, though with some reluctance, concludes that the Appeals Council's decision is supported by substantial evidence on the whole record. *Cf. Yamaha Corp. v. FTC,* 657 F.2d 971, 979 n.9 (8th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1768, 72 L.Ed.2d 174 (1982) (FTC rejects ALJ's findings, based in part on credibility determinations; Court of Appeals nevertheless upholds FTC's decision as supported by substantial evidence). Con-

trary to plaintiff's assertion, the Appeals Council did not reject plaintiff's testimony solely on the basis of a lack of objective evidence.[1] Rather, after a thorough review of the plaintiff's testimony, medical evidence, and other record evidence, the Council concluded plaintiff's testimony was not credible. In *Brand,* the Court of Appeals specifically stated that a "claimant's subjective complaints may be shown to be exaggerated by any inconsistency in claimant's testimony and all other circumstances in the case." 623 F.2d at 526 n.3. See also *Wilson v. Schweiker,* 681 F.2d 526 (8th Cir. 1982); *Andrews v. Schweiker,* 680 F.2d 559 (8th Cir. 1982).

Despite our affirmance of the Appeals Council's findings, we are troubled by the following passage in the Appeals Council's decision:

> In his decision, the administrative law judge summarized portions of the medical evidence, his observations of the claimant's appearance and demeanor at the hearing, and his assessment of the credibility of the claimant's testimony and concluded that the claimant was disabled. No regulatory basis for the conclusion was cited. On the contrary, the administrative law judge cited a district court decision from the Western District of Arkansas, *Strickland v. Califano,* 477 [447] F.Supp. 410 (1978), which quoted extensively from a Sixth Circuit Court of Appeals decision, *Sayers v. Gardner,* 380 F.2d 940 (1967), and offered the findings

---

**1.** In his motion for summary judgment, the Secretary makes seemingly conflicting statements concerning whether pain unaccompanied by objective medical evidence can serve as a basis for disability. The Secretary first argues that "the Secretary is entitled to find that plaintiff's subjective complaints are not credible in the face of negative medical findings," *citing* 20 C.F.R. § 404.1529 (Secretary's Motion for Summary Judgment at 6–7). But he then goes on to state that "it is well established that pain alone can be disabling . . . [and] [p]ain, in and of itself, has been recognized as a disabling condition under the Act . . . ." (*Id.* at 7). Because the Appeals Council did not discount plaintiff's testimony solely on the basis of lack of objective evidence, this Court need not resolve the validity of 20 C.F.R. § 404.1529, which provides:

> If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.

in these decisions as a legal basis for the finding that the claimant was under a "disability" due to back problems and pain. *However, the Secretary is bound only by the provisions of the Social Security Act, regulations and rulings, and by United States Supreme Court decisions. A district or circuit court decision is binding only in the specific case it decides.* (Tr. 82) (Emphasis supplied).

The Secretary acknowledges that he was bound on remand to follow the law of the case doctrine. The Secretary, however, makes clear his belief that the Social Security Administration is not bound by *stare decisis* to follow lower court precedent.

■ In *Ithaca College v. N.L.R.B.*, 623 F.2d 224 (2d Cir.), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980), the National Labor Relations Board made a similar argument. The Second Circuit first noted that it was agency practice "to refuse to follow unfavorable decisions from the Courts of Appeals even in instances such as this where it is likely that the case will come up for review before the very court with which the Board disagrees." *Id.* at 228. The Court then responded:

The position of the Board is one in which we cannot acquiesce. While deference is to be given to any agency's interpretation of the statute it administers, *see Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979); *NLRB v. Iron Workers*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978), it is the courts that have the final word on matters of statutory interpretation. *See International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 565–66, 99 S.Ct. 790, 799–80, 58 L.Ed.2d 808 (1979); *SEC v. Sloan*, 436 U.S. 103, 118–19, 98 S.Ct. 1702, 1712, 56 L.Ed.2d 148 (1978); *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); *Safir v. Gibson*, 417 F.2d 972, 976 (2d Cir. 1969), *cert. denied*, 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970). "The

position of any administrative tribunal whose hearings, findings, conclusions and orders are subject to direct judicial review is much akin to that of a United States District Court," *Morand Bros. Beverage v. NLRB*, 204 F.2d 529, 532 (7th Cir.), *cert. denied*, 346 U.S. 909, 74 S.Ct. 241, 98 L.Ed. 407 (1953), and as must a district court, an agency is bound to follow the law of the Circuit. *See Mary Thompson Hospital, Inc. v. NLRB*, No. 79–1374, 621 F.2d 858 (7th Cir. March 5, 1980); *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 969–70 (3d Cir. 1979); *NLRB v. Gibson Products*, 494 F.2d 762, 766 (5th Cir. 1974); *Stacey Manufacturing Co. v. Commissioner*, 237 F.2d 605, 606 (6th Cir. 1956); *cf. Cleveland v. Federal Power Commission*, 561 F.2d 344, 346 (D.C.Cir.1977) (agency must follow law of the case).

Of course, we do not expect the Board or any other litigant to rejoice in all the opinions of this Court. When it disagrees in a particular case, it should seek review in the Supreme Court. During the interim before it has sought review or while review is still pending, it would be reasonable for the Board to stay its proceedings in another case that arguably falls within the precedent of the first one. However, the Board cannot, as it did here, choose to ignore the decision as if it had no force or effect. Absent reversal, that decision is the law which the Board must follow. The Board cites no contrary authority except its own consistent practice of refusing to follow the law of the circuit unless it coincides with the Board's views. This is intolerable if the rule of law is to prevail.

As the Third Circuit has recently stated:

A decision by this court, not overruled by the United States Supreme Court, is a decision of the court of last resort in this federal judicial circuit. Thus our judgments . . . are binding on all inferior courts and litigants in the Third Judicial Circuit, and also on administrative agencies when they deal

with matters pertaining thereto.... [T]he Board is not a court nor is it equal to this court in matters of statutory interpretation. Thus, a disagreement by the NLRB with a decision of this court is simply an academic exercise that possesses no authoritative effect.... For the Board to predicate an order on its disagreement with this court's interpretation of a statute is for it to operate outside the law.

*Allegheny General Hospital, supra,* 608 F.2d at 970.

*Id.* at 228–29. This Court fully agrees with the above-quoted language. As the Supreme Court has recently stated, "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis,* —— U.S. ——, ——, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982) (per curiam). This statement is equally applicable to the relationship between administrative agencies and lower federal courts.

The Court realizes that ALJs are in an awkward position. They are trying to serve two masters: the courts and the Secretary of Health and Human Services. The task is not easy. The ALJ in this case tried conscientiously to carry out this Court's orders, and he is to be commended for that effort. We have decided, largely because of the narrow scope of judicial review to which Congress has confined us, that the Appeals Council's rejection of the ALJ's decision was not unlawful on this record. The result of this individual case should not obscure the fact that the regulations of HHS are not the supreme law of the land. "It is, emphatically, the province and duty of the judicial department, to say what the law is," *Marbury v. Madison,* 1 Cranch 137, 177, 2 L.Ed. 60 (1803), and the Secretary will ignore that principle at his peril.

This Court holds that substantial evidence supports the Secretary's denial of benefits. Judgment will be entered accordingly.